# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PAMELA GREENE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:14-cv-00799-JEO |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## **MEMORANDUM OPINION**

Plaintiff Pamela Greene brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc. 6). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

1

be affirmed.

## I.  PROCEDURAL HISTORY

On May 11, 2010, Greene filed an application for a period of disability and disability insurance benefits, alleging disability beginning March 27, 2010.  (R. 19, 117-21).[2]  Her application was denied by the State Agency.  (R. 59, 62-67).  She then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 1, 2012.  (R. 40-58).  Greene, her counsel, and a vocational expert ("VE") attended the hearing.  (R. 42).  The ALJ issued a decision on August 15, 2012, finding that Greene was not entitled to benefits.  (R. 16-34).

Greene requested the Appeals Council to review the ALJ's decision. (R. 14).  The Appeals Council denied Dixon's request for review on February 27, 2014. (R. 1-5).  On that date, the ALJ's decision became the final decision of the Commissioner.  Greene then filed this action for judicial review under 42 U.S.C. § 405(g).  (Doc. 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of

---

[2]References herein to "R.___" are to the page number of the administrative record which is encompassed within Docs. 4-1 through 4-13.

the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits under the Social Security Act, a claimant must show the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th

4

Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551 F. App'x at 524.

## IV.  FINDINGS OF THE ALJ

Greene was 51 years old on her alleged onset date and 53 years old at the time of her hearing before the ALJ. (R. 46, 117). She completed the eighth grade and has past relevant work experience as a convenience store manager. (R. 46, 54). She alleges that she has been unable to work since March 27, 2010, due to her alleged disabling condition. (R. 117).

The ALJ found that Greene had the following severe impairments: "coronary artery disease status post bypass surgery, multiple cauterizations (sic)[3] and stents; recurrent hernias; pelvic adhesive disease; osteopenia; radiculopathy; residual pain secondary to a history of motor vehicle accidents; cervicalgia; myalgias; insomnia; and epilepsy." (R. 21). He also found that Greene had several non-severe impairments, including obesity, hypertension, gastrointestinal

---

[3] The correct reference is most likely catheterizations in view of Plaintiff's medical history.

5

issues, liver issues, gynecological issues, polysubstance abuse, depression and anxiety, and a number of other minor conditions. (R. 21-24). He determined, however, that Greene did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Listings.[4] (R. 25)

The ALJ then found that Greene had the residual functional capacity[5] ("RFC") to perform light work, subject to the following limitations: she can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; she can sit, stand, and walk 6 hours each intermittently throughout an 8-hour day; she should never climb ladders, ropes or scaffolds and should only occasionally climb stairs and ramps; she should only occasionally stoop, kneel, crouch, and crawl; she can frequently engage in activities requiring balance; she should avoid concentrated exposure to the operational controls of moving machinery; and she should avoid unprotected heights. (R. 26).

Premised on the testimony of the VE, the ALJ determined that Greene could perform her past relevant work as a convenience store manager as such work is generally performed. (R. 33, 54-55). Alternatively, the ALJ found that there are

---

[4]The Listings are located at 20 C.F.R. pt. 404, subpt. P, app. 1.

[5]Residual functioning capacity is the most a claimant can do despite her impairment(s). *See* 20 C.F.R. §404.1545(a)(1).

other jobs in the national economy that Greene is capable of performing. (R. 33-34, 55). The ALJ thus concluded that Greene was not disabled. (R. 34).

## V.  DISCUSSION

Greene argues that the Commissioner's decision is not supported by substantial evidence and should be reversed or remanded for two reasons: the ALJ "failed to develop the record to obtain an accounting of [her] limitations based on the entire record," and the ALJ's RFC findings "would better comport with a sedentary RFC at best," in which case she would be considered disabled under the Medical-Vocational Guidelines.[6]  (Doc. 97-11). The Commissioner responds that the ALJ properly considered the medical evidence of record in finding that Greene could perform a light range of work, and that the ALJ was not required to employ the Medical-Vocational Guidelines in making his decision.  (Doc. 10 at 5-15).

---

[6]The Medical-Vocational Guidelines set forth rules that "reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work.  They also reflect the analysis of the various vocational factors (*i.e.*, age, education, and work experience) in combination with the individual's residual functional capacity ... in evaluating the individual's ability to engage in substantial gainful activity other than his or her vocationally relevant past work.  Where the findings of fact made with respect to a particular individual's vocational factors and residual functioning capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00.

A.     **Substantial Evidence Supports the ALJ's RFC Findings**

Greene argues that the ALJ's RFC findings "are not based on substantial evidence absent development of the record to obtain an MSO [medical source opinion] ...."[7] (Doc. 9 at 11). She concedes that "there was medical input at the initial level in the form of a reviewing physician opinion on November 9, 2010," but argues that "[t]he ALJ's RFC findings cannot be based on substantial evidence for the entire period at issue because the reviewing physician opinion ... was not based on a complete record including subsequent EMG findings on May 19, 2011 of L5 radiculopathy (R. 570) and further surgery for recurrent periumbilical and vental hernias on March 21, 2012 (R. 643) further reasonably affecting truncal movement." (Doc. 9 at 10). She notes that the ALJ could have obtained a medical source statement in two ways: by asking for the opinion of a medical expert, or by ordering a consultative examination. (*Id.* at 10-11).

The ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). The evidence in the record "must be complete and detailed enough to allow [the Commissioner] to make a determination or decision about whether [the claimant] is disabled ...." 20 C.F.R. §

---

[7]Although Greene uses the term "medical source opinion" in her memorandum of law, the more accurate term is "medical source statement." *See* SSR 96-5p, 1996 WL 374183, * 4 (July 2, 1996) ("Medical source statements are medical opinions submitted by acceptable medical sources ... about what an individual can still do despite a severe impairment(s) ....").

404.1513(e). However, an ALJ is not required to seek a doctor's assessment of a claimant's RFC; to do so would "confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96–5p, 1996 WL 374183 at *2. Likewise, the ALJ does not have to order a consultative examination unless the record contains insufficient evidence from which the ALJ can make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.").

In addition, a medical source statement is different from an ALJ's assessment of a claimant's RFC:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to [the Commissioner] by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

SSR 96-5p, 1996 WL 374183 at * 4. Although the Social Security regulations provide that the agency "will request a medical source statement" about what a claimant can do despite her impairments, "the lack of the medical source statement" will not make a physician's report incomplete. 20 C.F.R. § 404.1513(b)(6).

Here, Greene acknowledges that the evidence before the ALJ included a "reviewing physician opinion" dated November 9, 2010. (Doc. 9 at 10). The opinion was provided by Dr. Robert Heilpern, a state agency physician who reviewed Greene's medical records. (R. 525-32). Dr. Heilpern determined that Greene could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit about 6 hours in an 8-hour workday with normal breaks; climb ramps and stairs frequently; never climb ladders, ropes, and scaffolds; and balance, stoop, kneel, crouch, and crawl frequently. (R. 526-27). The ALJ afforded "significant weight" to Dr. Heilpern's opinion and his RFC finding incorporated the exertional and postural limitations assessed by Dr. Heilpern.[8] (R. 26). The ALJ noted that Dr. Heilpern's opinion was "supported by the claimant's broad range of activities of daily living, which included cooking, laundry,

---

[8] In fact, although Dr. Heilpern determined that Greene could frequently climb ramps and stairs and frequently stoop, kneel, crouch, and crawl, the ALJ's RFC finding limited Greene to only occasional performance of those acts. (*See* R. 26). In other words, the limitations in the ALJ's RFC finding were more restrictive than those assessed by Dr. Heilpern.

shopping and driving," and was "consistent with the other substantial evidence in the claimant's case record." (R. 32). In particular, the ALJ observed that Dr. Heilpern's opinion was "corroborated by the physical exam findings of consulting examiner, Dr. Jariwala, which showed essentially intact physical functioning." (R. 32, 484-87). Dr. Jariwala, who examined Greene in October 2010, did not see "any evidence of impairment of the lumbosacral spine or any of the peripheral joints ...." (R. 486). He noted that Greene's gait was "normal," that her "[m]otor and sensory system as well as [her] deep tendon reflexes [were] intact," and that she was "able to walk on her heels and toes" and "squat and arise without difficulty or assistance." (*Id.*)

Greene does not challenge any of Dr. Heilpern's conclusions (or any of Dr. Jariwala's findings), but instead argues that the ALJ erred in giving significant weight to Dr. Heilpern's opinion because it was not based on a "complete record." (Doc. 9 at 10). Specifically, Greene notes "EMG findings on May 19, 2011 of L5 radiculopathy"[9] and "surgery for recurrent periumbilical and vental hernias on March 21, 2012 ...." (*Id.*) While Greene is correct that Dr. Heilpern issued his

---

[9]Radiculopathy is "a pinched nerve in the spine. It occurs when surrounding bones, cartilage, muscle, or tendons deteriorate or are injured. The trauma causes these tissues to change position so that they exert extra pressure on the nerve roots in the spinal cord." http://www.healthline.com/health/radiculopathy#Overview1 (last visited June 30, 2015).

opinion before these subsequent developments occurred and that the ALJ did not seek a follow-up medical source statement or order a consultative exam, the ALJ reviewed the evidence regarding Greene's radiculopathy and hernias and factored in both conditions in making his RFC finding. With respect to Greene's radiculopathy, the ALJ stated:

> In May 2011, the claimant was treated for radiculopathy, which her provider considered linked to her abdominal pain. Test results confirmed radiculopathy. ... Notably, despite her various musculoskeletal complaints, the claimant presented with normal gait and full range of motion on exam in July 2011. Moreover, an MRI revealed no indication of any degenerative disc disease. In August 2011, the claimant was treated for radiculopathy, cervicalgia and myalgias. The undersigned observed that the claimant had mentioned fibromyalgia to her provider, yet no diagnosis of this condition was documented. The claimant continued to have active diagnoses of radiculopathy, cervicalgia and myalgias as of September. Insomnia was added.
>
> ...
>
> ... [T]he claimant was documented to suffer from cervicalgia, myalgias, radiculopathy and insomnia, which merited some work restrictions. Taking into consideration the claimant's subjective complaints and her admitted activities of daily living, the undersigned found the claimant capable of light work .... In sum, despite the claimant's subjective allegations, her underlying objective findings and her admitted activities of daily living simply did not full[y] support her allegations of disabling musculoskeletal impairment.

(R. 30-31) (exhibit citations omitted).

With respect to Greene's hernia surgery, the ALJ noted:

12

> In March 2012, the claimant's hernia issues reemerged and it was indicated that she required another hernia repair. The claimant underwent another hernia repair in late March and also had colon lesions removed. As of 2012, the claimant's provider suspected that her abdominal pain, post hernia repair, related to her pelvic adhesive disease. The claimant testified that in June 2012, she had undergone two hernia repairs in the past several months leading up to her hearing. Overall, the undersigned recognized that the claimant's recurrent hernia issues and pelvic adhesive disease merited some work restrictions. ... Still, given the claimant's admitted activities of daily living indicative of considerable exertional abilities, at least when motivated, and as the claimant continued to present with essentially normal physical exam findings throughout the record, the undersigned considered the claimant capable of light work .... In sum, while the undersigned found the claimant's testimony as to her hernia/abdominal problems genuine, the underlying objective evidence in combination with the claimant's admitted activities of daily living simply did not fully support her allegations.

(R. 31-32) (exhibit citations omitted).

In evaluating whether it is necessary to remand a disability determination for further consideration by the Commissioner, a reviewing court is "guided by 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.' " *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (quotations and citations omitted)). Here, the record reveals no such evidentiary gaps, notwithstanding the absence of a follow-up medical source statement or consultative examination. It appears that the ALJ was in possession of all of Greene's medical records pertaining to her radiculopathy and her March 2012 hernia surgery, and he

13

considered that evidence in the context of the evidence in the record as a whole. The evidence in the record was "complete and detailed enough" for the ALJ to make his RFC finding and determine that Greene was not disabled. 20 C.F.R. § 404.1513(e). Substantial evidence supports the ALJ's decision.

### B. The ALJ's Findings Comport with a Light Work RFC

As discussed above, the ALJ found that Greene had the RFC to perform light work, subject to a number of exertional, postural, and environmental limitations.[10] Without referencing any specific evidence, Greene argues in conclusory fashion that the ALJ's RFC findings "would better comport with a sedentary RFC at best," in which case she would be considered disabled under the Medical-Vocational Guidelines.[11] (Doc. 9 at 7). She asserts that "the effect of [her] obesity in combination with the severe and non severe impairments of record would reduce the RFC below the exertional requirements of light [work]." (Doc. 9 at 9).

The court first notes that the ALJ found Greene's obesity to be a non-severe impairment. (R. 22). He observed that "the claimant's obesity has not resulted in

---

[10]Light work involves "lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[11]Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

any uncontrolled hypertension or diabetes" and determined that the obesity did not cause more than "minimal interference with the claimant's ability to perform work-related functions." (R. 22).  Significantly, Greene does not challenge the ALJ's finding that her obesity is a non-severe impairment.  Rather, citing Social Security Ruling 02-1p, she argues generally that obesity can cause limitations in all exertional and postural functions and can affect an individual's ability to sustain routine movement and work activity.[12]  (Doc. 9 at 8).  As the Commissioner correctly observes, however, Greene does not show (or even attempt to show) how "*her obesity*, or her condition in general, caused limitations beyond the limitations the ALJ found in assessing [her] with a RFC to do a range of light work." (Doc. 10 at 12-13) (emphasis added).  In this regard, SSR 02-1p cautions that the agency "will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity with another impairment may or may not increase the functional limitations of the other impairment.  We will evaluate each case based on the information in the case record."  SSR 02-1p, 2002 WL 34686281 at *6.  Here, the information in the case record comports with the ALJ's finding that Greene could perform light work

---

[12]Social Security Ruling 02-1p "provide[s] guidance on SSA policy concerning the evaluation of obesity in disability claims ...."  SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

subject to the noted limitations.

Moreover, premised on the testimony of the VE, the ALJ found that Greene could perform her past relevant work as a convenience store manager as such work is generally performed. (R. 33). Therefore, the ALJ did not err in failing to apply the Medical-Vocational Guidelines; the Guidelines apply only where a claimant is unable to perform "his or her vocationally relevant past work." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a); *see Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Furthermore, because substantial evidence supports the ALJ's finding that Greene had the RFC to perform a limited range of light work (as opposed to sedentary work), the Guidelines would direct a finding of "not disabled" even if they applied. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.00 Table 2, Rules 202.10-202.12.

## VI. CONCLUSION

The Commissioner determined that Greene was not disabled under the Social Security Act. For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be **AFFIRMED**.

**DONE,** this the 1st day of July, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge